[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On August 13, 1999 the court issued a memorandum of decision after trial in this matter. The court found that the defendant had violated the Connecticut Unfair Trade Practices Act ("CUTPA"), General Statutes § 42-110a et seq. and that judgment should enter for the plaintiff against the defendant for compensatory damages of $33,333.33. The court then scheduled a hearing on the plaintiff's request for awards of punitive damages and attorney's fees under CUTPA. That hearing was held on September 1, 1999. After receiving post-hearing briefs from both parties, the court is prepared to rule on these remaining issues.
Awards of punitive damages and attorney's fees under CUTPA are discretionary with the court. Gargano v. Heyman,203 Conn. 616, 622 (1987). In order to award punitive damages the court must find conduct that shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights. Id. "[T]he flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." Id.
Although this court initially attempted to distinguish reckless conduct from intentional or wanton conduct, our Supreme Court has stated that "in practice the three terms have been treated as meaning the same thing." Dubay v. Irish,207 Conn. 518, 533 (1988). Therefore, wilful, wanton and reckless conduct all involve highly unreasonable conduct, an extreme departure from ordinary care, conduct constituting "more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence or simply inattention." (Citation omitted.) Id.
The court previously found that the defendant breached his fiduciary duty to the plaintiff and violated CUTPA as well. However, neither the evidence adduced at trial nor the evidence at the supplemental hearing demonstrate that Rosenblatt's conduct meets the standard necessary for the imposition of punitive damages. Certain aspects of the defendant's actions, particularly his decision to refuse to participate in fee mediation under the CT Page 12480 auspices of the Connecticut Bar Association, a decision made as a result of emotional pique, are troubling to the court. However, the defendant's actions were not malicious or highly unreasonable nor did they constitute an extreme departure from ordinary care. The court therefore declines to award punitive damages.
An award of attorney's fees under CUTPA rests in the sole discretion of the trial court; CUTPA sets forth no standard for an award of such fees. Staehle v. Michael's Garage, Inc.,35 Conn. App. 455, 461 (1994). The party seeking an award of attorney's fees must prove the reasonableness of attorney's fees by an appropriate evidentiary showing. Barco Auto Leasing Corp.v. House, 202 Conn. 106, 121 (1987).
The court finds that an award of attorney's fees to the plaintiff in this action is appropriate and necessary. Absent an award of attorney's fees the plaintiff could not be made whole. Since August, 1991 the plaintiff has been deprived of a substantial sum of money, $33,333.33 as a result of the defendant's violation of CUTPA as well as breach of his fiduciary duty. It would be inappropriate under these circumstances for the plaintiff to bear the expense of his attorney's fee.
The court finds that the plaintiff hired two attorneys in connection with his claim against the defendant. Initially, prior to 1993, the plaintiff hired Attorney Paul Bialobrzeski, who agreed to represent the plaintiff at a reduced hourly rate of $75 per hour because of Bialobrzeski's friendship with the plaintiff's wife. Bialobrzeski did not obtain a retainer from the plaintiff. There was no evidence that Bialobrzeski ever billed the plaintiff and the plaintiff has not paid any fees to Bialobrzeski pursuant to the agreement.
After a motion to disqualify Bialobrzeski was filed and it appeared that this matter would lead to protracted litigation, Bialobrzeski involved Attorney Bruce Newman and reduced his involvement in this matter. The plaintiff met with Newman in April, 1997 and signed an agreement providing for a one-third contingency fee. The agreement was with "the Law Offices of Jaziowiecki Newman" with the words "and Paul Bialobrzeski" added in handwriting. Newman left the partnership of Jazlowiecki and Newman in May 1998 and although there was no written assignment of the fee agreement to Newman, Newman and Jazlowiecki understood that Newman would fulfill the agreement. At trial Newman represented the plaintiff. Bialobrzeski was not present. CT Page 12481 The court finds' that the contingency fee agreement is the operative fee agreement at this time. The $75 hourly agreement between the plaintiff and Bialobrzeski has been abandoned.
The Appellate Court has indicated that Johnson v. GeorgiaHighway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974) sets forth the factors to be considered by the trial court in determining the amount of attorney's fees to be awarded under CUTPA. Hernandez v. Monterey Village Associates,24 Conn. App. 517, n. 1 (1991); Steiger v. J.S. Builders, Inc.,39 Conn. App. 32, 38 (1995). The plaintiff's post-hearing brief seeks an award of attorney's fees and refers only to the contingency fee agreement, not to any other basis for such an award. The court infers, therefore, that the plaintiff's request is for attorney's fees of $11,111.11.
The court finds that an attorney's fee in that amount is reasonable under the factors cited in the Johnson v. GeorgiaHighway Express case, which are analyzed hereafter. Although the plaintiff did not offer direct evidence of the amount of time spent by his attorneys on this matter, the court finds, based on its familiarity with the file, that this action was brought in September, 1993 and trial began on December 3, 1998, over five years later. The court record consists of four files full of the customary pleadings, pre-trial motions and post-trial briefs. Trial took a full day on December 3 and was rescheduled for a date later in December and then rescheduled again for a date in January. The defendant and his attorney failed to appear on the scheduled date in January and the court therefore entered a nonsuit and held a hearing in damages and entered judgment for the plaintiff. The defendant thereafter filed a motion to open the judgment. Hearing on that motion was held on April 29, 1999. After the motion was granted, the trial resumed on that same day and then concluded. The parties filed briefs in May and June. In August the court issued its decision. On September 1 the hearing on punitive damages and attorney's fees took approximately half the day. The parties then filed additional briefs on punitive damages and attorney's fees. Based on these facts and ten years experience on the bench, the court finds that counsel for the plaintiff had to have spent at least seventy-five hours on this case.
The court further finds that at least one issue in this case was an issue of first impression in Connecticut, i.e., the propriety of a contingent attorney's fee for the collection of CT Page 12482 the proceeds of a life insurance policy, plaintiff's counsel therefore had to research cases from many other states in order to brief this issue. The trial, however, required only average trial skills.
With respect to the customary fee charged, the court finds, based on the evidence and from the court's experience, that $150 per hour is a standard rate charged for routine litigation in the Waterbury area. No evidence was offered by the plaintiff concerning: (1) whether the acceptance of the representation of the plaintiff precluded counsel from other employment; (2) any time limitations imposed; (3) the undesirability of the case or (4) awards in similar cases.
The fee agreed to by the parties was contingent, not fixed. The amount involved, $33,333.33, although significant to the plaintiff, is average from the court's perspective. Neither of the attorneys involved had a prior professional relationship with the plaintiff and neither is claiming a higher than average fee because of any expertise or special skill or ability.
Based on this analysis of the factors set forth in Johnson,
the court finds the requested fee of $11,111.11 is reasonable. A fee based on seventy-five hours of work at the customary rate of $150 would be $11,250 and the requested fee is therefore found to be reasonable by the court.
Judgment is entered for compensatory damages in the amount of $33,333.33 plus attorney's fees in the amount of $11,111.11 plus costs. In addition, judgment is entered for interest at the rate of 12% per year from April 15, 1997 until September 14, 1999 on $44,444.44, the total amount awarded, because of the plaintiff's offer of judgment, which was not accepted by the defendant.
VERTEFEUILLE, J.